## Bush Estate

*Hillegass & Moran,* for accountant.

*Wallace M. Keely,* for legatee.

*Paul P. Wisler,* for Commonwealth

*Charles H. Brunner, Jr.,* for Montgomery County Institution District.

VAN RODEN, P. J., (thirty-second judicial district, specially presiding), August 17, 1948.—Decedent, who was a widow, died March 28, 1944, survived by one child, Mary Emma Megilligan, who is insane and has been confined for many years in the Norristown State Hospital.

By her will, decedent directed the executor to purchase a marker for her grave at a cost of $100 and a similar marker for the grave of her daughter, after the latter's death. She then bequeathed certain personal effects unto her granddaughter, Olga Ruth Bush, and devised and bequeathed the residue of her estate in trust for her sister-in-law, Carrie Bush, for life, with remainder in favor of the said Olga Ruth Bush.

The first and final account of the executor discloses gross assets of $5,358.96 and total credits claimed in the sum of $2,036.87, leaving a principal balance of $3,322.09. There is also an income balance of $531.60.

Claims against the estate were presented by the Commonwealth of Pennsylvania and the Montgomery County Institution District for the cost of maintenance

of decedent's daughter at the Norristown State Hospital. Liability of decedent's estate for the cost of such maintenance was not denied, but the amount due on the respective claims of the Commonwealth and the institution district was disputed by the executor. After considerable testimony was produced in support of said claims, it was clearly established that the correct amount of the claim of the Commonwealth is $3,084.70, and the correct amount of the claim of the institution district is $3,043.99. Accordingly, the said claims are hereby allowed in said respective amounts and the accountant is directed to pay same out of the assets of the estate to the extent that such assets are available therefor. It is obvious that the balance on hand is insufficient to pay both claims in full. The Fiduciaries Act of June 7, 1917, P. L. 447, sec. 13 (a), 20 PS §501, governing priority of payment of decedent's debts, provides that debts due to the Commonwealth shall be paid last. However, the Act of April 11, 1947, P. L. 59, amending the Mental Health Act of July 11, 1923, P. L. 998, 50 PS $150, provides that where there is not sufficient in the estate to pay in full the claims of the Commonwealth and a political subdivision for the support of an indigent insane person the same shall be paid pro rata, in proportion to the amount of their respective claims. It has been held that such language by implication operates as a partial repeal of the above-mentioned section of the Fiduciaries Act: Newton Estate, 354 Pa. 146 (1946). Accordingly, the accountant is therefore directed to apply the balance of the estate to the payment of the claims of the Commonwealth of Pennsylvania and the Montgomery County Institution District pro rata, in proportion to the amount of their respective claims.

The account has been confronted also by certain exceptions filed on behalf of Carrie Bush, as legatee, and the Commonwealth as claimant.

Exception No. 1 relates to the payment of the undertaker's bill in the amount of $416.75, which is alleged to be excessive in view of the insolvency of the estate. In Nicholson's Estate, 57 D. & C. 181 (1946), this court (per Dannehower, J., specially presiding) stated that "It is a policy of this court of long standing to allow not more than $300 for funeral expenses out of the estate of an insolvent decedent. For payment of the balance the undertaker must look to the person who contracted for the funeral".

This is certainly a very sensible policy, properly intended to prevent unnecessary lavishness of funerals at the expense of the creditors. It is not believed, however, that the rule is an inflexible one under all circumstances. It is rather a general policy for the guidance of the court in the absence of special circumstances. In the instant case, the court finds that such special circumstances did exist. At the time of decedent's death, the insolvency of the estate was not apparent, as the extent of the claims of the Commonwealth and the institution district were in dispute. It appears that the executor believed in good faith that the estate was solvent. The executor took personal charge of the funeral and made the arrangements with the undertaker, but none of decedent's relatives objected to the kind of funeral which was provided. Since the undertaker's charges were fair and reasonable for the type of funeral provided, it does not seem fair to impose a loss on him with respect thereto, nor should the executor, who acted in good faith, be required to stand such loss. Under all the circumstances of this case, the court is convinced that the funeral bill is not excessive. Accordingly, the exception relating thereto is hereby dismissed.

Exception No. 2 relates to a credit claimed by the accountant in the sum of $550 for services rendered

to decedent prior to her death. Accountant was of course incompetent to testify to matters occurring prior to decedent's death. There was sufficient competent evidence, however, to establish beyond dispute that the accountant performed many services for decedent over a period of 14 years. Decedent was blind and aged, and none of her relatives was able to care for her. When her son-in-law died in 1930, the accountant, who was the attorney for his estate, felt obliged to make suitable arrangements for her care and thereafter settled her in a series of boarding homes, took care of payment of her bills, wrote letters and made telephone calls for her, and took her to visit her daughter, at the Norristown State Hospital. He also secured a blind person's pension for her, successfully resisted efforts of the Commonwealth to terminate the pension, wrote her will and performed various other legal services for her. She did not have sufficient income to pay him for the services as rendered and there was an understanding between them that he would look to her estate for compensation. Under such circumstances, the charge of $550 for services extended over a period of 14 years appears very modest indeed and the court is of the opinion that accountant is justly entitled to receive payment. Accordingly, the exception relating thereto is hereby dismissed.

Exception No. 3 relates to the credit claimed in the sum of $250 for payment to Norristown Memorial Works for two monuments. The court is informed that said monuments have not actually been erected and that the said sum has been deposited with the monument maker to take care of the cost of a grave marker to be erected on decedent's grave and one to be erected on her daughter's grave, after the latter's death, as provided in decedent's will.

In Krewson's Estate, 37 D. & C. 555 (1940), President Judge Holland, in a scholarly opinion, held that

the cost of a tombstone is not a proper charge against an insolvent estate. This decision was cited and followed in Good's Estate, 50 D. & C. 61 (1944). Upon the basis of these precedents, therefore, the court is constrained to hold that due to the insolvency of the estate, the accountant is not justified in expending funds for tombstones for decedent and her daughter. Accordingly, exception No. 3 is hereby sustained and the accountant is surcharged accordingly. However, in the event that accountant is able to secure the written approval of all parties in interest, including the Commonwealth of Pennsylvania and the Montgomery County Institution District, to the purchase and erection of such suitable grave markers, leave is hereby granted unto the accountant to comply therewith.

Exception No. 4 relates to accountant's commission in the sum of $294.52 and exception No. 5 relates to attorneys' fees in the sum of $300 paid to the law firm of which accountant is a member. The said exceptions must be considered together, since it is agreed that at least one of said charges is proper, the sole complaint being that accountant is not entitled to both commission and attorney's fees.

The rate of executor's commissions charged by accountant is five percent on the gross estate. This is the normal and usual rate of executor's commissions, and is clearly not objectionable.

The situation of an executor who is an attorney claiming both commissions and attorney's fees is always a troublesome one. In Eckels' Estate, 37 D. & C. 383 (1940), President Judge Holland carefully analyzed the many cases on this subject and arrived at the following conclusions:

"1. A lawyer who is the sole fiduciary cannot take commissions as fiduciary, and a fee as attorney, for the ordinary and routine work done as attorney to the

fiduciary. He must choose between the two. But, even if he is the sole fiduciary, he may take his commissions as such and receive also an attorney fee for *extraordinary* services.

"2. Where there are two or more fiduciaries, one or more of whom is or are a lawyer or lawyers, he who is a lawyer can act as counsel for the fiduciaries generally, and be paid attorney fees for *ordinary* and *extraordinary* legal services according to the usual rates, the same as if he were not one of the fiduciaries. He may also receive his share of commissions as fiduciary.

"3. Where the sole fiduciary is a lawyer, or one or more of a number of co-fiduciaries is or are a lawyer or lawyers, nevertheless, the fiduciary or fiduciaries may employ an attorney (not one of the fiduciaries) to do the necessary legal work incident to the settlement of the estate or administration of the trust, in which case the attorney so employed may be paid from the trust at the usual and proper rates for *ordinary* or *extraordinary* legal work."

Other lower court cases, however, have gone further and have held that an attorney-fiduciary may be properly compensated in each capacity regardless of the ordinary or extraordinary nature of the services rendered: Lutz's Estate, 40 D. & C. 611 (1941); Heltzel's Estate, 52 D. & C. 337 (1945); Schooley's Estate, 56 Dauph. 328 (1945).

An attorney who employs the law firm of which he is a member to act as counsel in an estate of which he is the sole fiduciary must be considered in the same category as an attorney who acts in the dual capacity of fiduciary and lawyer. It is not necessary, however, in the instant case, to decide whether the accountant's firm is entitled to legal fees for ordinary services, since the court is convinced that unusual and extraordinary services were involved in this case. It seems clear

from the record that the disputed claims of the Commonwealth and the institution district required a great deal of effort in searching past records to determine the extent of previous payments on account of said claims and also to determine whether or not there was a duplication or overlapping as between the claims of the Commonwealth and the institution district. As a result of the efforts expended by accountant's law firm, the said claims were considerably reduced in amount. In addition thereto, the accountant required the services of his law partner in representing him at the several hearings held in connection with the exceptions to the account. Under all the circumstances, the court is convinced that the credits claimed for both commissions and attorneys' fees are fair and reasonable and should properly be paid out of the estate. Accordingly, exceptions 4 and 5 are hereby dismissed.